May it please the court, we're asking your honors to reverse and remand for retrial all counts because the district court erred in three ways. First, the district court abused its discretion because it used an incorrect, over-expansive definition of dangerous weapon in its instructions to the jury on the assault with a dangerous weapon counts. The district court's definition was incorrect because it conflicted with the earliest panel opinion in this circuit defining dangerous weapon under section 113. That earliest panel opinion from 1984 was United States v. Hollow and it defined a dangerous weapon as an object, quote, used in a manner likely to endanger life or inflict serious bodily harm. That definition is constrained, placing reasonable limits on what can constitute a dangerous weapon in a given case. But the district court used a definition that conflicted with Hollow. It defined dangerous weapon as, quote, any object capable of being readily used by one person to inflict bodily injury upon another person. Now the district court's definition conflicted with Hollow in two ways that each independently render it inadequate as a matter of law. And the first thing that the- I don't really see how an instruction can conflict with an opinion that was discussing sufficiency of the evidence. There's a disconnect there for me. Okay. I understand what you're asking. In the Hollow case, it was a sufficiency of the evidence case, but the defendant argued that the item he used was not a dangerous weapon. And this court held that it was a dangerous weapon because it was used in a manner likely to endanger life or inflict serious bodily harm. So in doing so- That didn't set a floor for the- It wasn't addressing how you charge a jury. Well, that's correct, Your Honor. Do we have a jury in the cases that follow Hollow? Are they instruction cases? No, Your Honor, but the later cases that used the expansive definition the district court used, starting with LeCompte, they were also all sufficiency of the evidence cases. They were not- This is an issue of first impression at the Eighth Circuit. The instruction issue. The instruction issue, yes. You could view it that way. Yes. Somebody might have told us that in the briefs. I apologize, Your Honor. No, it just . . . you can't . . . Well, I wasn't a trial judge, but I'm pretty sure trial judges attempt to fashion instructions from the prior Eighth Circuit decisions discussing the statute, but in another context. But if the prior decisions weren't instruction issues, then they're just guidance for the district court fashioning instructions. Okay. And the instructions, perhaps, on this issue would vary depending on the facts of the case. Perhaps, Your Honor. And if this court chooses to view this issue as an issue of first impression, what should the definition of dangerous weapon be under the jury? I wouldn't answer that categorically. Okay. It's almost guaranteed. Okay. That's not our function is to . . . They are not controlling. Yes. What we would argue is that the hollow definition should be the definition that's followed because it places reasonable limits on what can qualify as a dangerous weapon. But the Lecomte definition, the definition used by the district court, places no reasonable limits on what can qualify as a dangerous weapon. And I'd like to use, perhaps, count six in this case as an example, which is the count charging the use of the plastic hanger. Based on evidence introduced at trial, the jury could have concluded that the defendant hit the victim one time with a plastic clothes hanger. Now, under the Lecomte definition or the district court's definition, the jury was virtually compelled to conclude that that was still a dangerous weapon because it was capable of causing bodily injury. Whereas under the hollow definition, the jury . . . it's entirely possible that the jury would have concluded that that object, using a hanger to hit someone one time, is not using it in a manner likely to endanger life or inflict serious bodily harm. And so, I think that is an illustration of the fact that hollow provides a reasonably limited definition of dangerous weapon, but the Lecomte case and the district court's definition do not provide that. Well, the jury will decide what they'll decide based upon the rest of the evidence that they've heard. I can't really see where your arguments with respect to this whole subject have a substantive difference in the long haul. Our argument is that under the district court's definition, the Lecomte definition, there are two problems with that definition. One, it only requires that an object be capable of causing bodily injury. And so, whether it can cause bodily injury is without reference to the facts of a particular case. So, for example, hitting someone one time with a hanger that's capable of causing bodily injury, just a hanger by itself without . . . regardless of use, is capable of causing bodily injury. But, whereas under hollow, hitting someone one time, that may not be used in a manner likely to cause serious bodily harm or endanger life. Yes, but it's possible, but this is a case where it's not a sufficiency of the evidence case. You don't draw all inferences in favor of the verdict. Under harmless error, you ask, is it reasonably possible that the jury, if correctly instructed, would have found the defendant not guilty? And, as using that count six as an illustration, under the hollow definition, it is reasonably possible they could have found him not guilty. So, I would say that's a concrete illustration of the difference. And, the second deficiency of the Lecomte definition and the district court's definition is that it gets the degree of injury wrong. It only requires bodily injury, whereas the hollow definition requires life endangerment or serious bodily harm. And, that also provides a reasonable limit. And, another point I'd like to make is that, among the other circuits, the vast majority of circuits that have defined dangerous weapon, under section 113, use a variant of the hollow definition. In instruction cases or sufficiency cases? Your Honor, I do believe that most of them are sufficiency cases, as well. You're 28J, and I'm brave bull. There's another sufficiency case where the district court charged your way. They did, yes. In the Eighth Circuit. Yes. Didn't feel constrained by either Lecomte or hollow. Well, it used the hollow definition, I would say. Correctly. Didn't feel constrained by Lecomte. Yes, and I would say it instructed correctly. We affirm there, and we, you know, I just, I, these, using sufficiency cases, which are, where we always are reviewing on a particular set of facts, with an instruction that's been given, and to say this was, this is sufficient, doesn't say anything about what might or might not be sufficient in the next case. I understand, Your Honor. I, what I would point . . . It was probably like this one, where the injuries were so bad, and so serious, that there could be no question of, of, of, of sufficiency under either instruction. Right, Your Honor, in, in, in this case, the . . . I see the prejudice here. I mean, these . . . Yes. These injuries were, were so beyond the pale that I, I, you better, you, you better tell me why, how a reasonable jury on these facts, with a different instruction, why, why and how it would have been different. Right, Your Honor. What I would say to that is that, let's begin, take count six, for example. That's the hanger count. Based on the evidence introduced, the jury could have concluded that the defendant hit the victim one time with a clothes hanger. And under the hollow definition, it is entirely possible they would have found that the defendant did not use a clothes hanger in a manner likely to endanger life or inflict serious bodily harm. Whereas under the district court's definition, the Lecomte definition . . . I'm not talking about the weapons. Why, why, why are we now going to the, I don't even know about count six, the hand count. That is . . . You're, you're going beyond the brief now, and I haven't gone and studied the record yet. I thought we were talking about the use of the objects. Yes, Your Honor. That is what I'm attempting to talk about. I'm trying to . . . Is that not count six? Is that, I know there was . . . Count six is, he was charged with assault with a dangerous weapon for hitting the victim with a clothes hanger. And what I'm noting is that . . . Yeah, what I'm noting is that . . . Do you have another? No, I thought you said hand. Oh, I'm sorry. I said hanger. I may have misspoken. I'm sorry. Okay. All right. And I just move on briefly to the second issue before I . . . Yes. You haven't . . . You haven't . . . You haven't come back to my . . . It's a prejudice point. Yes. With the extent of the injuries, how could a reasonable jury have concluded other than it did because it got . . . Because the charge included the word serious. Yes. I understand what you're saying. So I think that the government makes the same point in their briefs. And what they do is they focus on all the injuries in the aggregate. But the jury . . . the jury was supposed to decide if he was guilty with respect to each individual count. And the testimony by the victim about what the defendant did was fairly vague. And the government didn't prove which objects caused which bruises. So our point is that using the hollow definition, it is possible . . . What was that? Yes, Your Honor. How does this get you a new trial and everything? Well, Your Honor . . . If you want to go count by count and say that there was no ability to look at this cumulatively. Right, Your Honor. And we did note this in the briefs in our request for relief. What we have asked is that if this court finds that there was a harmless error with respect to some counts, but non-harmless error with respect to others, then we would ask for reversal and remand of the non-harmless error counts. And I would reserve the remainder of my time for rebuttal. Thank you. May it please the Court, Counsel. I'm Kevin Colliner for the U.S. Attorney's Office in South Dakota, arguing on behalf of the government. I'd like to start with the prejudice point here and talk a little bit about the undisputed evidence in this case. And the reason is that, as Your Honors know, that's the government's backstop on all of the arguments in this appeal. The evidence here regarded the physical abuse of this then nine- or ten-year-old child and the resulting injuries, and that went entirely undisputed at trial. The evidence was about a child who showed up to school with bruises on her body, such that the superintendent principal of the school called in a law enforcement agent, who then met with this child and viewed bruising all over her body, lifted her shirt, saw bruising and abrasions in different healing stages, took the child into the- Why don't you move right to the point he just made? The individual counts and the cumulative injuries weren't parsed out, as I understood him to say, among the counts. And so why don't we have to do this count by count? These were concurrent sentences, Your Honor, and so under that argument- He only gets $100 back, but maybe he gets resentencing, too. Under that argument, if a defendant uses different tools of abuse and only hits a child once or twice with each tool and it's charged out count by count, then there can never be child abuse. Maybe you're not charging it intelligently, then. Well- No, I mean, we've got to deal with it. There was evidence as to each tool of abuse here. The child testified as to each incident, each item that she was hit with. In fact- So her testimony will establish, obviously, serious injuries from each tool. That she was hit numerous times with each tool. But the injury, I mean, the instruction he says we should mandate is serious injury, not multiple whacks, serious injury. Does the evidence show serious injury from the use of each tool? Well, there was not evidence with respect to anyone being able to tell forensically after the fact that this particular portion of the bruising was done with the coat hanger. But that's not her testimony. She talked about how she was hit multiple times with each thing on different days and different parts of her body that were struck. Well, the record may not be so ideal as I thought it would be. The child was then taken to an IHS facility where a physician there viewed her, the extent of the injuries all over her body. Photographs were introduced into evidence. Ultimately, the physician sent her up to another facility to get CT scans and x-rays because she also had concerns that just the significance of the bruising on this child could even harm her kidney function. So the evidence here was of very severe abuse. Now, turning to the question of this jury instruction with respect to assault with a dangerous weapon. Do you have any case law on this crime as to whether if it's charged in multiple counts, you can aggregate despite the differentiation? It's not an issue that I researched, Your Honor, in preparation for this. It wasn't briefed and I'll admit that it's not something that I have any information that will be helpful to the court on it today. On the jury instruction with the assault with the dangerous weapon count, Your Honor, Judge Loken, you're correct that all of the cases cited deal with sufficiency of evidence. We believe that that does not result in a scenario discussed under Mader where this court is bound then by the first panel's ruling on an argument where there's conflict. As Your Honor pointed out, when sufficiency is a standard, the court is then dealing with the standard as been handed to it by the district court and how it's been instructed there. That's true of all the cases from other circuits as well. What this district court had before it in terms of the case record from this court was 20 years, five different opinions that when caused to go through the elements of 1113A3, defined dangerous weapon as a question for the jury but one that is defined as an object capable of inflicting bodily injury. I agree that it's a first impression issue for this court. What I would refer the court to is the language of the statute itself, and that's I think what the court was focused on in the Lecomte case when defining the elements. The statute itself doesn't talk about endangering life or serious bodily harm. It says assault with a dangerous weapon with intent to do bodily harm. The term serious is something that's been injected here by defense in this proposed instruction. Now, statutes, the other sections in 1113 use the term serious in certain places, so clearly Congress knew how to use that word if they intended it in 1113A3. I will also . . . It might be in the briefs in which case I missed it. Do we have a model jury instruction that addresses this? There is now. It's 6.18113 subdivision 3. Yeah. In the reply brief, I think defense counsel does a good job of explaining the application notes or the notes following, the commentary notes following that, that do talk about these different lines of cases now. I would like to talk briefly about the question on the South Dakota jury instruction on the Guardian issue here. That was a question that was raised initially by defense counsel about using the South Dakota defense, statutory defense, and the district court expressed, I think appropriately, concern that this term guardian is a legal term of art and to allow a jury to make a factual determination as to whether this individual is a guardian seems to be an odd thing for a court to do and ultimately asked to sort of take a breather on it and to research the issue and to come back later when reviewing instructions in the district court did that and came back telling counsel that his research of the term guardian in South Dakota law showed no instance in where guardian was defined other than as someone who was given some legal status by a court. And again, I think appellant's counsel in his brief does a good job of outlining some other South Dakota code statutes. My research has shown no occasion where when the South Dakota legislature has defined the term guardian, they've defined it as anything other than someone with a legal status appointed by a court. So I think the court was well within its discretion here to not give this instruction because this was a defendant who no one argued had been imbued with any sort of legal status as a guardian. I thought the grandmother, there was evidence that the grandmother said, you know, go ahead and hit him if you have to. But the South Dakota statute in this respect does not include an agent of a guardian. But I don't care about the statute. Well, frankly, it seems to me your strongest argument is the way the defense, what the defense requires in relation to the . . . Right. And that's where I was going next, reasonable in manner and moderate in degree. I think in a criminal case like this, I think the jury should be entitled to infer from the relationships if the evidence so . . . Someone who is a de facto guardian by reason of family situations or whatnot, I don't see why that person couldn't be entitled to instruction on this defense, even though there's no way, no one in the South Dakota legal community would say he or she is a, quote, guardian. And the instruction that was given in this case included the term without just cause or excuse. In other words, the defense was not hindered in any way because as instructed, the defense was allowed to argue just the theme of its case, that the reason that I beat this child over the course of three days with four objects was because I had just cause or excuse. I was concerned about her, quote, unquote, bothering boys. So that was . . . it didn't hinder the defense in any way. In fact, that defense was built into the instruction that was given. The question is about whether the court abused its discretion by not giving this extra instruction on South Dakota law, and we believe the district court got that right. I want to circle back to where we began the argument again because I'm still a little bit confused. As I understand, the argument made by the defendant is essentially that there should have been a different instruction given. If you look at the statute, the statute kind of makes plain that what a dangerous weapon is, is really just there's two things. It first needs to have the capacity to cause bodily harm, right? And then second, it has to be used in a manner sufficient, right? That's what the statute says. The statute hasn't defined it. Yeah, well, no, but if you just look at . . . That's the reason in a way. That's the reason. And if you look at what the pattern jury instruction is, that's where the pattern jury instruction committee eventually gets. But it seems like that's a reasonable interpretation of the statute, right? Now, isn't it all harmless? I mean, at this point, except by choosing to plead it out weapon by weapon by weapon, do we then have to tie any resulting injury to it? Now, it seems to me that that's the argument that they're advancing. You say, well, you're hit with a hanger, you know. Lecomte says no definitively on that question. It requires only that the government present, and I'm quoting here,  of inflicting bodily injury, not that the victim actually suffered bodily injury. So this court has decided that question definitively. Okay, so if it's capable and used in a manner consistent, that should end the discussion. And at that point, it's all harmless, right? That's correct. I mean, whatever the judge should or should not have instructed. That's correct. I would talk just briefly about the Rule 412 question that's been raised as well. It was a very, very limited Rule 412 exclusion that the district court ultimately arrived at here, and that was concerns that the defendant couldn't testify about her, quote, unquote, touching boys. There was no problem, and in fact, the government agreed that the evidence could come in about her bothering boys was the quote that was used, kissing boys, being with these older boys. But there was concern on this motion in limine about extrinsic evidence of, you know, contact aside from those things. Now, you look at the record about what came in regardless of that, and there was testimony throughout this trial that, in my view, violated that motion in limine, but we didn't object to it. So it came in. It was before the jury. The young girl testified she got hit because defendant thought, quote, I was bothering boys. She claimed I was honest about that, that I wasn't. She testified the three beating incidents each time it was about bothering boys. The cross of her. It wasn't argued this morning, and I'd like to come back to the guardian question. Sure. Because you argued, Fred, you argued harmless by referring to what was charged. But it seems to me the question is what was requested to be charged, and wasn't that the language of 22-18-5? That's correct. Which is, and if restraint or correction has been rendered necessary by the misconduct of the child and the force used is reasonable in manner and moderate in degree. Right. I would have thought that was your personal prejudice argument. And I agree entirely, and I thought I did say that as well. There's no question that this wasn't reasonable in manner and moderate in degree. That trumps what was charged. I agree. Now, the other part of it is that he wasn't, the defense wasn't constrained in making its general theme that what he did was justified. And the instruction, the child abuse instruction that was given included that without justification or excuse. I see my time's about up. If there are any other questions of the court, I'm happy to answer it. If not, we'd simply ask that these convictions be affirmed. Thank you very much. Thank you, counsel. Mr. Dean, we've got some time for rebuttal. I would start by responding to the question that Judge Erickson, you asked about the LeComte case and the fact that it says that you don't actually have to cause injury in order to have a weapon qualify as a dangerous weapon. I would agree with that. But in this case, our argument is that the reason that the government had to approve the injuries is because the testimony about what the defendant did to the victim was vague. So it couldn't be inferred that the items were automatically dangerous weapons. And that was our point. And the reason that we make that argument is because of the hollow requirement, not just of bodily injury, but serious bodily injury or life endangerment. And so the jury had to infer that that degree of harm was how the object was, or that the object was used in a manner likely to cause that degree of harm. And that's why, in this case, the proof of which objects caused which bruises was important. But it wouldn't necessarily be required in any given case. And I would like to move on to the Guardian issue, which was discussed by opposing counsel. And what I would note is that he said that the defense was not hindered by the failure to provide this instruction. But I would point to some quotations from the transcript. I think that would refute that claim. So in refusing to give the reasonable use of force by Guardian instruction, the district court stated, quote, Mr. Spotted Horse had no more authority to touch this child than I did. The fact that the child was living with him has no legal significance. Transcript page 162. This is outside the presence of the jury. That's correct, Your Honor. This is neither here nor there. Then the government stated to the jury in closing argument, quote, he was not her legal guardian. He had no more authority to punish this child than you or I did. That's at transcript page 286. So I think what that shows is that the jury. Didn't the jury hear the evidence that the grandmother had, it's okay to hit him? They did hear that. They did hear that. And didn't the court instruct the jury that arguments of counsel are not evidence? Yes. Yes. What then? Well, the point is that it's. Where are you going with this? Right. What I'm saying is that it's entirely possible that the jury, if they had been given the Guardian instruction, they may have reached a different verdict with respect to the, at least some of the counts. If they had considered the reasonable use of force by Guardian. The argument would have been different. Yes. It would have. The defense counsel would have been able to make a much more robust argument. You just said the prosecutor argued, would not have been argued if the instruction had put the Guardian question at issue factually. I'm not sure I'm understanding the question. I don't understand your argument. Okay. So, and besides which you don't address how any reasonable jury could have found that this was. Reasonable force and moderate and reasonable in manner and moderate in degree. Right. And again, I would just use that count six as an example. You can't go count by count on that. Why? All right. As to each weapon, if you call it. Or each instance of alleged abuse. Wasn't there testimony of multiple hittings with each of the three? Yes. There was testimony about multiple hittings. But how the extent of it was very vague. So our argument is that. The jury could have found that. With respect to each individual account that there was reasonable disciplinary force. Thank you, Your Honor. Thank you, Counsel. I would note in both of these last cases. That the reply briefs. Were longer than the government's brief. Now. As judges reading twenty-six briefs in a row. In order to prepare for one of these weeks. We only have one defense to that. And that's not to read it. And I invoke that. I invoke that defense. And. Understood. Thank you.